**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **LONNIE KADE WELSH,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **A-20-CV-337-RP** |
| | § | |
| **BRYAN COLLIER, et al.,** | § | |
| **DEFENDANTS.** | § | |

**ORDER**

Before the Court are Plaintiff Lonnie Kade Welsh's second amended complaint filed pursuant to 42 U.S.C. § 1983 (ECF No. 46), Defendants Bryan Collier, Joni White, Tara Burson, Marissa Bartholet[1], April Thompson, and Cynthia Tilley's Motion for Summary Judgment (ECF No. 82), and Welsh's responses along with his Motion to Withdraw Misstatement (ECF Nos. 88, 90-91). Defendants Pollard-Fortsan, Rediskez, and Nowlin also have a pending Motion to Alter Judgment. (ECF No. 75.) Welsh is proceeding pro se and in forma pauperis. Upon review of the record, the Court grants Defendants' Motion for Summary Judgment and Welsh's Motion to Withdraw Misstatement and dismisses as moot the Motion to Alter Judgment.

**I. Statement of the Case**

In October 2015, a jury determined Welsh to be a Sexually Violent Predator (SVP) pursuant to the Texas Civil Commitment of Sexually Violent Predators Act (SVPA), TEX. HEALTH & SAFETY CODE ANN. § 841.001, and the trial court entered an order of civil commitment. *See In re Commitment of Lonnie Kade Welsh*, No. 09-15-00498-CV, 2016 WL 4483165 (Tex. App.— Beaumont Aug. 25, 2016, rev. denied). Thereafter Welsh was in custody of the Texas Civil

---

[1] Defendant Bartholet's name is misspelled in Plaintiff's complaint and should be corrected to Marissa Bartholet.

Commitment Office (TCCO) and resided at the Texas Civil Commitment Center (TCCC). In May 2018, a jury convicted Welsh of tampering with evidence, and in June 2018 he was transferred to the custody of the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ-CID). However, on February 26, 2019, the Texas Seventh Court of Appeals reversed Welsh's conviction for tampering with evidence. *Welsh v. State*, 570 S.W.3d 963 (Tex. App.—Amarillo 2019, pet. ref'd). After the Texas Court of Criminal Appeals (TCCA) denied the State's Petition for Discretionary Review, Welsh was transferred back to the custody of the TCCO on August 6, 2019.

On March 30, 2020, Welsh filed the instant complaint, and was later granted leave to file a second amended complaint, naming the following defendants: Bryan Collier, Executive Director of TDCJ; Joni White, TDCJ Assistant Director for Classification; Tara Burson, Marissa Bartholet, and April Thompson, TDCJ State Classification Committee (SCC) members; Valencia Pollard-Fortsan, Health Service Administrator at TDCJ's Hughes Unit; Rachel Nowlin and Katherine Rediskez, Hughes Unit mental clinicians; Dale Dorman and Carly Parkinson, Step II Medical Grievance Program Officers; Marsha McLane, Executive Director of TCCO; Cynthia Tilley; and an unnamed Director of the University of Texas Medical Branch. (ECF No. 46).

In March 2021, the Court granted Defendants McLane, Nowlin, Pollard-Fortsan, Rediskez, Parkinson, and Dorman's Motions to Dismiss. (ECF No. 71.) Defendants Nowlin, Pollard-Fortsan, and Rediskez subsequently filed a motion to alter judgment, asking the Court to enter final judgment in their favor. (ECF No. 75.) Defendants Collier, White, Burson, Bartholet, Thompson, and Tilley now move for summary judgment, arguing that Welsh's claims against them fail to state a claim for relief, and in the alternative, they are entitled to qualified immunity. (ECF No. 82.) Specifically, Defendants argue that (1) section 841.150 of the Texas Health and Safety Code is not

unconstitutional as-applied to Welsh; (2) Welsh does not have a procedural or substantive due process right to either mental health or sex offender therapy while in the custody of TDCJ; (3) section 841.0821 of the Texas Health and Safety Code does not create a liberty interest in receiving sex offender therapy while in TDCJ; (4) Welsh was not untimely released from TDCJ custody after his 2018 conviction was reversed; (5) Welsh's work requirement in TDCJ did not violate the Constitution; (6) Welsh's failure-to-train claims fail as a matter of law; (7) Defendants were not deliberately indifferent to Welsh's serious medical need for mental health and sex offender treatment; and finally (8) Welsh's claim that he is insane and should not be punished fails as a matter of law. (ECF No. 82.) In response, Welsh restates his allegations and arguments from previous court filings; as evidence, he attached the final judgment in his commitment case along with an affidavit. (ECF Nos. 88, 90.) Welsh has also filed a motion requesting to withdraw a statement he made in his first response to Defendants' summary judgment motion (ECF No. 91).

## II. Factual Background

As relevant to the claims currently before the Court, the summary judgment record shows the following.[2] After Welsh was transferred to TDCJ's Boyd Unit following his 2018 conviction, he immediately submitted an I-60 form to Defendants Burson, Bartholet, and Thompson at the SCC, stating he was a "mentally ill sex offender and requested treatment for [his] Behavioral Abnormality which requires long term sex offender treatment." (ECF No. 88-1 at 4.) Welsh received no response to his I-60 request. (ECF No. 64-7 at 28.) In August 2018, Welsh filed a Step

---

[2] Welsh's responses to Defendants' summary judgment incorporate his prior court filings in ECF Nos. 36-1 and pages 14-24 in ECF No. 79. ECF No. 79 itself refers to documents attached to Welsh's Response in Opposition to the Motions to Dismiss, ECF No. 64. Accordingly, the Court incorporates ECF Nos. 36-1, 64, and 79 (14-24) into the summary judgment record. *But see Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."); *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (explaining that it is not necessary "that the entire record in the case . . . be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered").

1 grievance stating he was a SVP and required sex offender therapy which he could not get at the Boyd Unit. He requested transfer to a unit that could accommodate his need for sex offender therapy. Defendant Tilley responded "Investigation revealed the Classification Department at the unit level does not assign offenders to sex offender therapy programs. The decision to assign offenders to programs [is] made in Huntsville. The offender will be notified if and when it is the appropriate time to begin any such programs." (*Id.* at 28-29.) Welsh wrote a Step 2 grievance of this denial, but it was returned as improperly filed. (ECF No. 64-12 at 6-7.)

In April 2019, Welsh filed another Step 1 grievance alleging he had spoken with Defendants Nowlin and Rediskez about his mental health concerns but that another person—McDow—had refused to treat Welsh. Defendant Pollard-Fortsan responded as follows:

> Un-Substantiated: You were seen by mental health staff on 3/1/19, 3/22/19 and 3/29/19 to address the complaints on your grievance. You were seen in accordance with Mental Health Policy A-4P. You had requested of mental health staff, when seen on 3/1/19, for sex offender treatment programs that is not offered by this department. You had requested of Mental Health staff, when seen on 3/22/19, to obtain a letter of recommendation that states "you do not have an emotional and behavioral predisposition to being attracted to teenagers." Mental Health staff does not prepare letters of recommendations. You were offered an opportunity to verbalize any mental health concerns and you denied any mental health concerns. Any additional mental health concerns you may have can be addressed by submitting an I-60/SCR to mental health staff.

(*Id*. at 37.) Welsh appealed the denial of this grievance, and Defendants Dorman and Parkinson responded as follows:

> A review of the Step 2 Medical Grievance has been completed regarding your complaint against mental health (MH) staff. Your grievance claims you were denied entry to a sex offender treatment program (SOTP) by the Mental Health Manager (MHM) you named. To resolve this grievance, you asked to receive mental health (MH) treatment for your disorder.
>
> Electronic healthcare records (EHR) show yow were seen on 02/21/2019 by a Mental Health Clinician (MHC) and denied having any MH needs. You signed a Refusal of Treatment (ROT) form for all MH services, including counseling. Documentation supports you were seen multiple times by different clinicians in

03/2019 and were unable to identify a realistic goal for counseling. MH staff have already informed you that [a] SOTP is not available through the MH Department: and that you should contact the Classification Department.

The appellate review of Step 2 grievance agrees with the Step 1 response. There was no documentation found to suggest you are not being given access to MH services. The Classification Department must refer you for participation in an SOTP. This program is not offered through the MH Department at your UOA. You may wish to submit an SCR addressed to the Classification Department at your UOA to determine if you are eligible for referral to an SOTP. Additionally, records indicate you did not attempt informal resolution with supervisory staff. Please be advised you must first attempt Informal Resolution through the established process prior to filing a grievance. No further action required.

(*Id.* at 34-35.) Welsh attached a document showing that on February 21, 1029, he declined "Mental health services including individual counseling." (*Id.* at 61.)

Jennifer Deyne, TDCJ's Deputy Director of Sex Offender Programs, attested that TDCJ had three types of Sex Offender Rehabilitation Programs: Sex Offender Civil Commitment Treatment Program (SOTP-CC); Sex Offender Education Program (SOEP); and Sex Offender Treatment Program (SOTP). SOTP-CC is designed for SVPs within 18 months of their release. Deyne attested that, to be eligible for any of these programs, an offender would have to be (1) identified as a sex offender, (2) within 9-24 months of their release or parole, and (3) either a G2 or G3 custodial status with no felony or ICE detainers. Deyne stated that Welsh would not have been eligible for any programs until November 2026, and that his custodial status—G4—also made him ineligible for any sex offender treatment programs. (ECF No. 82-6 at 3.)

Jessica Marsh, the Deputy Director of TCCO, attested that "Section 841.0821 of the Health and Safety Code requires TDCJ and TCCO to institute a continue of care program for civilly committed SVPs. TCCO and TDCJ have worked together to develop the STOP-CC program which provides sex offender treatment to civilly committed SVPs who are with 18 months of release from TDCJ." (ECF No. 82-2 at 3.)

Finally, documents show that after Welsh's tampering conviction was reversed and the TCCA refused the State's Petition for Discretionary Review, the Seventh Court of Appeals issued its mandate on August 2, 2019. (ECF No. 82-4 at 3.) Jessica Marsh attested "[t]he mandate was published after business hours on Friday August 2, 2019. The next business day, Monday August 5, 2019, TCCO worked with TDCJ to schedule Mr. Welsh's release and Mr. Welsh was picked up by TCCO the morning of August 6, 2019. Mr. Welsh's release was scheduled and processed expeditiously upon issuance of the mandate and there was no delay." (ECF No. 82-2 at 2.) Kim Massey, Assistant Director for Classification and Records at TDCJ, confirmed Ms. Marsh's account and attached a copy of the mandate stamped by TDCJ on August 5, 2019. (ECF No. 82-5 at 4.)

## II. Discussion and Analysis

### 1. Summary Judgment and Qualified Immunity

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); Fed. R. Civ. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. The moving party without the burden of proof need only point to the absence of evidence on an essential element of

the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party cannot rely on general allegations but must produce "specific facts" showing a genuine issue for trial. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. *See James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990). The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *See id.* (citing *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). A government official performing a discretionary function is shielded from liability for civil damages so long as his actions do not violate a clearly established right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown*, 623 F.3d at 253. The plaintiff must therefore present evidence sufficient to create a genuine dispute of material fact as to whether (1) the official's conduct violated a constitutional right of the plaintiff, and (2) the constitutional right was clearly established so that a reasonable official in the defendant's situation

would have understood that his conduct violated that right. *See id.*; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). For the right to be clearly established, the plaintiff must show that defendants had "fair warning that the alleged treatment of [Plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). When considering a qualified immunity defense, the Court views the evidence in the light most favorable to the non-movant and draw all inferences in the non-movant's favor, *see Rosado v. Deters*, 5 F.3d 119, 122-23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

2. Claims Against Defendant Collier

The majority of Welsh's undismissed claims are against Defendant Bryan Collier. Welsh claims (1) Texas Health & Safety Code section 841.150 is unconstitutional as applied to Welsh and seeks a declaration to that effect; (2) Collier violated Welsh's procedural due process rights by not providing Welsh with sex offender or mental health therapy while in TDCJ; (3) Collier violated his substantive due process rights by not providing Welsh with said therapy; (4) Collier failed to train Defendants Burson, Bartholet, Thompson, Tilley, and White, which resulted in them denying Welsh therapy; (5) Collier delayed Welsh's release from TDCJ, thereby violating his Fourth and Fourteenth Amendment rights; (6) Collier violated Welsh's Thirteenth Amendment rights by forcing him to work in TDCJ and not compensating him for his labor; and (7) Collier unconstitutionally punished Welsh, who is insane, when Collier allowed Welsh to be incarcerated in TDCJ and the Lamb County Jail. These claims are addressed in turn.

a. *Section 841.150 is Unconstitutional*

In Welsh's first claim, he names Collier in his official capacity and seeks a declaration that Texas Health and Safety Code section 841.150 is unconstitutional as applied to Welsh. Entitled

"Effect of Subsequent Detention, Confinement, or Commitment on Order of Civil Commitment,"

section 841.150 states that

> (a) The duties imposed on the office [TCCO] and the judge by this chapter are
> suspended for the duration of a detention or confinement of a committed person in
> a correctional facility, secure correctional facility, or secure detention facility, or if
> applicable any other commitment of the person to a community center, mental
> health facility, or state supported living center, by governmental action.

Tex. Health & Safety Code Ann. § 841.150 (West 2021). The section also defines a

"correctional facility" as "a place designated by law for the confinement of a person arrested for,

charged with, or convicted of a criminal offense" and includes, among other things, a confinement

facility operated by TDCJ. *Id.* § 841.150(b)(2); Tex. Penal Code. Ann. § 1.07(a)(14)(B) (West

2021). Welsh argues the statute violates his Fourteenth Amendment rights because the State cannot

deem him a SVP who requires long-term sex offender treatment and supervision, but then suspend

this treatment while Welsh is out of TCCO custody. Defendants argue Welsh does not have a due

process right to sex offender treatment, and that even assuming Chapter 841 grants him a right to

treatment, the statute can then limit the rights it creates. Upon review, the Court concludes this

claim is moot.

Mootness is a threshold jurisdictional inquiry. *La. Envtl. Action Network v. U.S. Envtl.
Prot. Agency*, 382 F.3d 575, 580 (5th Cir. 2005). Even if Defendants fail to raise the issue of

mootness, the Court can nonetheless addresses it *sua sponte*. *See Dailey v. Vought Aircraft Co.*,

141 F.3d 224, 227 (5th Cir. 1998) ("a federal court is obligated to raise the mootness issue, *sua
sponte*, if the facts suggest mootness notwithstanding the silence of the parties with respect to the

issue"); *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990) ("a mootness issue quite clearly can be

raised *sua sponte* if not addressed by the parties").

According to Welsh's complaint and the summary judgment evidence, Welsh was transferred from TDCJ to the TCCC on August 6, 2019. He filed the instant complaint on March 30, 2020. (ECF No. 1.) Thus, at the time Welsh filed his complaint, he was in TCCO's custody receiving sex offender treatment. Section 841.150 states that the duties of the TCCO are suspended during a SVP's commitment in, among other places, a correctional facility such as TDCJ. As a result, Welsh's transfer out of TDCJ in August 2019 resulted in section 841.150 no longer applying to him, and thus rendered his claim for declaratory relief moot. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (inmate's transfer out of correctional facility rendered claims for declaratory and injunctive relief moot). Further, although Welsh may return to TDCJ custody in the future, "any suggestion of relief based on the possibility of transfer back to [TDCJ] is too speculative to warrant relief." *Id.* Accordingly, this claim is dismissed as moot.

   *b.  Procedural Due Process*

   Welsh claims that Defendant Collier violated his procedural due process rights when Collier failed to comply with Texas Health & Safety Code section 841.0821 and come to an understanding with TCCO for the treatment of SVPs in TDCJ custody. Welsh further argues that Collier violated his procedural due process rights by failing to provide him with sex offender and mental health treatment during his incarceration in TDCJ.

   "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must first establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To state a claim for a violation of his right to procedural due process, Welsh must first identify a liberty or property interest that triggers the protections of the Fourteenth Amendment. A liberty

interest can arise from either the Constitution itself or from an "expectation or interest created by state laws or policies." *Id*.

Entitled "Sex Offender Treatment Before Release from Secure Correctional Facility," Section 841.0821 states

(a) The Texas Department of Criminal Justice shall prioritize enrolling in a sex offender treatment program established by the department any committed person who has not yet been released by the department.

(b) The Texas Department of Criminal Justice and [TCCO] shall adopt a memorandum of understanding that establishes their respective responsibilities to institute a continuity of care for committed persons enrolled in a sex offender treatment program established by the department.

TEX. HEALTH & SAFETY CODE ANN. § 841.0821 (West 2021). As part of their summary judgment evidence, Defendants supplied the "Memorandum of Understanding" signed in 2015 by Defendant McLane and then-TDCJ Executive Director Brad Livingston. (ECF No. 82-7 at 3.)

Welsh appears to argue that Collier violated section 841.0821 by relying on the 2015 Memorandum of Understanding, which Welsh argues is defective because, contrary to the section 841.0821's explicit language, the Memorandum does not require that SVPs in TDCJ custody receive sex offender treatment. To the extent that Welsh is using his interpretation of section 841.0821 to argue the statute creates a liberty interest in sex offender treatment, the Court previously addressed this argument in its March 8 dismissal order, concluding the language in section 841.0821 does not create such a liberty interest. (ECF No. 71 at 5-8.)

In his responses to Defendants' Motions to Dismiss and Motion for Summary Judgment, Welsh stresses he was not seeking only sex offender treatment in TDCJ but also mental health treatment to address his behavioral abnormality. Welsh argues he has a liberty interest in mental health care, and cites to *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) for the proposition that "mental health needs are no less serious than physical needs." The *Gates* opinion, however,

11

addressed the issue of severely psychotic prisoners housed on Death Row, many of whom received no mental health services whatsoever. *Id.* at 335. The claims there were also based on the Eighth Amendment, not the Fourteenth Amendment. In any event, Welsh's behavioral abnormality is what gave rise to civil commitment as SVP[3] and thus Welsh seeking mental health treatment for his behavioral abnormality is just a different way to of saying he sought sex offender therapy.

The summary judgment evidence shows that Welsh was not eligible for SOTP-CC treatment during his period of incarceration, and that he declined the mental health services that were offered him. Furthermore, Welsh has failed to allege facts or provide any evidence suggesting Collier was personally involved in any deprivation of Welsh's procedural due process rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action"); *see also Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005) (absence of evidence for non-movant's claim is proper basis for granting summary judgment). Accordingly, Collier is entitled to qualified immunity. *See Brown*, 985 F.3d at 494 (Government officials enjoy qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

c.  *Substantive Due Process*

Welsh claims Collier violated his substantive due process rights by failing to provide him with sex offender and mental health treatment. The Fourteenth Amendment's Due Process Clause also "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the

---

[3] *See* Tex. Health & Safety Code Ann. § 841.001 (West 2021) ("The legislature finds that a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities . . .").

procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). To state a substantive due process claim, Welsh must demonstrate that Collier "acted with culpability beyond mere negligence." *McClendon v. City of Columbia*, 305 F.3d 314, 325 (5th Cir. 2002). The Supreme Court has emphasized that "'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" (*Id.*) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

The summary judgment evidence shows that Welsh was offered mental health therapy, which he declined on at least one occasion, and that he was not eligible for the SOTP-CC during his incarceration in TDCJ. Further, it is an open question in the Fifth Circuit whether SVPs have a constitutional right to treatment, *see Brown*, 985 F.3d at 496 (observing a circuit split regarding whether sexually violent offenders have a due process right to treatment and noting the Fifth Circuit has not spoken on the issue), and thus even if Welsh's constitutional rights were violated, those rights would not have been clearly established during the time of his incarceration, *see id.* at 494. Finally, Welsh has not alleged facts suggesting Collier was personally involved in any violation of Welsh's constitutional rights. *See Thompson*, 709 F.2d at 382. Accordingly, Collier is entitled to qualified immunity.

### d.  Failure to Train

Welsh argues Collier failed to train subordinates White, Burson, Bartholet, Thompson, and Tilley, which resulted in the violation of Welsh's constitutional rights when these defendants did not provide him with sex offender and mental health treatment during his TDCJ incarceration.

"A supervisor may . . . be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise

amounts to deliberate indifference.'" *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Merely negligent or incompetent supervision cannot form a basis for liability under § 1983; rather, the supervisor's actions or inactions must rise to the level of "deliberate indifference." *Id.*

As previously noted, Welsh has not shown that either his procedural or substantive due process rights were violated when he did not receive the sex offender or mental health treatment he sought while incarcerated in TDCJ. According to the summary judgment evidence, he was not eligible for the SOTP-CC program until 2025 and Welsh has not shown that TDCJ's interpretation of section 841.0821 violated his constitutional rights. As a result, because White, Burson, Bartholet, Thompson, and Tilley's alleged failure to provide Welsh with sex offender treatment did not violate his clearly-established constitutional rights, Welsh's failure-to-train claim against Collier fails. Accordingly, Collier is entitled to qualified immunity.

e. *Untimely Release from TDCJ*

Welsh argues Collier violated his constitutional rights when Collier delayed Welsh's release from TDCJ after his criminal conviction was overturned on appeal. The summary judgment evidence shows the following.

The Texas Seventh Court of Appeals reversed Welsh's conviction for tampering with evidence on February 26, 2019. *See Welsh*, 570 S.W.3d at 963. On July 3, 2019, the Texas Court of Criminal Appeals refused the State's Petition for Discretionary Review. (ECF No. 82-3 at 2.) On August 2, 2019, the Seventh Court of Appeals issued its mandate, reversing Welsh's conviction. (ECF No. 82-4 at 3.) The mandate was received by TDCJ-Classification on August 5, 2019, and Welsh was released from TDCJ custody on August 6, 2019. According to TDCJ policy, only a mandate from the Court of Appeals or Texas Criminal Court of Appeals can trigger the release of an offender from TDCJ custody. (ECF No. 82-5 at 2-4.)

Welsh does not dispute these facts; rather, he argues that it is unreasonable for the Texas Seventh Court to take a month to issue its mandate. Welsh also admits TDCJ moved him to a different unit two weeks prior to his release "to prepare and make it easier to release him." (ECF No. 88 at 10-11.) Accordingly, the summary judgment evidence shows that, contrary to Welsh's allegations, his release from TDCJ custody following the issuance of the mandate was prompt. TDCJ and Defendant Collier have no authority over how long it takes a court to complete its administrative tasks. Therefore, this claim fails as a matter of law.

f.  *Thirteenth Amendment*

Welsh claims Collier violated his Thirteenth and Fourteenth Amendment rights when he required Welsh to work while in TDCJ custody and failed to compensate Welsh for his labor.

As with most of Welsh's individual-capacity claims against Collier, this claim fails because Welsh does not allege Collier was personally involved in any purported constitutional violation. *See Thompson*, 709 F.2d at 382. This claim also fails as a matter of law, however, because "forcing inmates to work without pay, and compelling them to work on private property without pay" does not violate the Thirteenth Amendment. *Ali v. Johnson*, 259 F.3d 317, 318 (5th Cir. 2001). Further, because "compelling an inmate to work without pay does not violate the Constitution," *Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006), Welsh also does not state a claim for a violation of his Fourteenth Amendment due process rights and Collier is entitled to qualified immunity.

g.  *Right Not to be Punished*

In Welsh's final set of claims against Collier, he argues his volitional capacity disorder means he is legally insane and thus should not have been punished with incarceration in TDCJ. Welsh also argues Collier should have intervened when Welsh was in custody in Lamb County Jail and should have immediately released Welsh from TDCJ custody due to his insanity. Welsh

seeks damages as well as injunctive relief against Collier to prevent Welsh from being punished with incarceration in the future.

Welsh advanced essentially the same claims against Defendant McLane, which the Court dismissed in its March 8 order. (ECF No. 71 at 11.) As Collier argues, there is a legal difference between criminal insanity and a SVP's behavioral abnormality: under Texas law, criminal insanity occurs when, "as a result of severe mental disease or defect, [the actor] did not know his conduct was wrong" and "does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." TEX. PENAL CODE ANN. § 8.01 (West 2021). In contrast, a SVP's behavioral abnormality is a "congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense." TEX. HEALTH & SAFETY CODE ANN. § 841.002(2) (West 2021).

There is no cognizable legal theory under which Defendant Collier, in either his official or individual capacity, could be found liable for not concluding Welsh was criminally insane and thereby intervening to preventing Welsh's conviction and incarceration. Collier is entitled to qualified immunity.

3. Claims Against Defendants Burson, Bartholet, and Thompson

Welsh claims that Defendants Burson, Bartholet, and Thompson—members of TDCJ's SCC—violated his constitutional rights when they failed to place him in sex offender therapy. Specifically, he alleges these defendants violated his Fourteenth Amendment right to procedural and substantive due process and were also deliberately indifferent to his medical needs.

As explained above, Welsh's claims for procedural and substantive due process violations fail because he has not shown that he has a liberty interest in sex offender or mental health therapy and his allegations fail to show the kind of arbitrary and egregious state action needed to state a

substantive due process claim. Regarding Welsh's deliberate-indifference claim, in order to establish deliberate indifference regarding his medical care, Welsh must show "that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001)). To succeed on his claims, Welsh must show that (1) Defendants were aware of facts from which they could infer a substantial risk of serious harm exists, and (2) they drew the inference. *See Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (en banc). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (quoting *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)). Rather, the official's conduct "must be 'wanton,' which is defined to mean 'reckless.'" *Id.* (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Defendants argue that sex offender therapy is not the kind of medical need the Eighth Amendment protects, and that even if it were, Welsh's access to sex offender therapy was delayed, not denied. The Court denied a similar deliberate-indifference claim against Defendants Nowlin and Rediskez in its March 8 order. Welsh argues the failure to treat his behavioral abnormality has resulted in a serious harm, i.e. the degradation of his mental health. However, the summary judgment evidence shows that Welsh was assessed for mental health therapy several times and refused treatment and that offenders were not eligible for any of TDCJ's sex offender programs until they were within eighteen months of release. Accordingly, the summary judgment evidence shows that, rather than being "wanton" or "reckless" in their alleged disregard of Welsh's serious medical needs, Defendants Burson, Bartholet, and Thompson were implementing TDCJ policy

17

when they did not make him eligible for sex offender therapy. These defendants are entitled to qualified immunity.

4. Claims Against Defendant Tilley

Welsh advances similar claims against Defendant Tilley as the ones he raised against Burson, Bartholet, and Thompson, i.e. that Tilley violated his procedural and substantive due process rights and that she was deliberately indifferent to his medical needs. For the reasons stated above, these claims also fail to state a claim for relief. Further, it appears from the record that the only involvement Tilley had with Welsh was in denying his grievance when the SCC failed to provide him with sex offender therapy. However, prisoners do not have a protected liberty interest in having their grievances addressed and resolved to their satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Accordingly, Defendant Tilley is entitled to qualified immunity.

5. Claims Against Defendant White and Director of University of Texas Medical Branch

Welsh advances one claim against Defendant Joni White, namely that she failed to train Defendants Burson, Bartholet, and Thompson. The summary judgment evidence shows that White retired from TDCJ on November 30, 2017, seven months before Welsh was convicted of the tampering offense and incarcerated. (ECF No. 82-8 at 2.) White therefore had no personal involvement in Welsh's incarceration and is entitled to qualified immunity.

Finally, Welsh named "Director of University of Texas Medical Branch" in his second amended complaint but failed to identify this individual or allege any claims against the Director. Welsh has failed to state a claim against this defendant and they are dismissed pursuant to 28 U.S.C. § 1915(e).

## III. Conclusion

18

It is therefore **ORDERED** that Defendants Collier, Burson, Bartholet, Thompson, Tilley, and White's Motion for Summary Judgment (ECF No. 82) is **GRANTED** and Plaintiff's claims against these defendants are **DISMISSED WITH PREJUDICE**. It is further **ORDERED** that Plaintiff's claims against the defendant identified as the Director of the University of Texas Medical Branch are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim under 28 U.S.C. § 1915(e). It is finally **ORDERED** that Defendants Nowlin, Pollard-Forstan, and Rediskez's Motion to Alter Judgment (ECF No. 75) is **DISMISSED AS MOOT** and Plaintiff's Motion to Withdraw Misstatement (ECF No. 91) is **GRANTED**.

SIGNED this 20th day of July, 2021.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE